IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-30626
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTOPHER FULLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

July 31, 1997

Before KING, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:[*]

Christopher Fuller appeals the contempt conviction and sentence imposed by the district court. Finding no reversible error, we affirm.

## I. BACKGROUND

The saga of Christopher Fuller's conviction for criminal contempt is regrettably lengthy and replete with the kind of behavior that could be predicted to end in a contempt conviction.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Fuller was indicted by a grand jury on August 5, 1993, and charged with conspiracy to distribute 990 dosage units of lysergic acid diethylamide (LSD), in violation of 21 U.S.C. § 846. On August 12, 1993, Fuller was arraigned, pleaded not guilty, and was released on a $25,000 unsecured bond with conditions of travel restrictions and pretrial supervision.

A superseding bill of information was issued in which the time period of the conspiracy was changed, but the charge of conspiracy to distribute 990 dosage units of LSD remained. Fuller pleaded guilty on September 29, 1993. Sentencing was set for December 15, 1993, and Fuller was released on his earlier bond.

On December 8, 1993, a warrant was issued for Fuller's arrest due to his failure to attend appointments at the Pretrial Services Office and his positive tests for marijuana on three separate occasions. With the warrant for his arrest still outstanding, Fuller failed to appear for his scheduled sentencing on December 15, 1993. A second warrant for his arrest was issued, and Fuller was arrested on January 4, 1994, at which time his bond was revoked and he was remanded to the custody of the United States Marshal.

On January 5, 1994, Fuller was sentenced to five years probation subject to the standard general conditions of probation plus the following special conditions: residency at the Volunteers of America halfway house for a period of six months

2

and mandatory participation in a program of testing and/or treatment for drug abuse.

On April 22, 1994, a Petition for Summons was filed against Fuller alleging that he tested positive for marijuana on six occasions, he failed to keep appointments at his drug counseling center on two occasions, and he was terminated from the drug aftercare program in which he was participating. On May 11, 1994, pursuant to a hearing on the Rule to Revoke Probation, Fuller stipulated to the allegations in the Petition, and the district court revoked Fuller's probation. Fuller received a sentence of nine months imprisonment followed by two years of supervised release.

Fuller served his nine months of imprisonment and began his term of supervised release on March 2, 1995. Seven months later, on October 11, 1995, the Office of Probation filed a second Petition for Summons alleging numerous new violations of the conditions of his release including positive tests for marijuana, benzodiazepines, and cocaine, and failure to attend scheduled drug counseling treatment appointments. The Petition also alleged that on September 6, 1995, Fuller had been arrested by the Jefferson Parish Sheriff's Office for possession and distribution of LSD.

On October 11, 1995, Fuller appeared before a magistrate judge. The magistrate judge explained to Fuller the government's allegations against him, set a $5,000 unsecured bond with the

3

standard conditions, and instructed Fuller to appear in court on October 25, 1995.  The magistrate judge further instructed Fuller: "If you violate any condition of release, a warrant for your arrest may be issued and you could be jailed until this matter is disposed of and also prosecuted for contempt of court."

On October 25, 1995, Fuller appeared with counsel for a hearing on the Rule to Revoke Supervised Release before the Honorable Morey L. Sear.  Chief Judge Sear found that Fuller had violated the conditions of his supervised release and ordered that he be committed to the custody of the Bureau of Prisons for a period of eighteen months.

At the hearing, Fuller begged to be given some time to spend with his mother, who was dying of cancer.  In response to Fuller's pleas, Chief Judge Sear ordered that Fuller be permitted to self-surrender to an institution designated by the Bureau of Prisons on or before noon on January 5, 1996.  Chief Judge Sear permitted Fuller to remain on bond pending his self-surrender; however, the bond was amended to include the following conditions: 1) that Fuller report to the U.S. Probation Office each day of the week that the Office is open and provide a urine specimen; 2) that Fuller reside exclusively with his mother, and that his fiancee vacate the premises immediately; 3) that Fuller not associate in any way with anyone who uses controlled substances or had controlled substances at his disposal; 4) that Fuller remain on electronic monitoring; and 5) that Fuller report

4

to JoEllen Smith Hospital to begin his drug treatment.

On October 30, 1995, five days after his sentencing and release on bond, Fuller failed to report to his home as per the condition of his bond, and on October 31, 1995, Fuller failed to report to the United States Probation Office. A warrant for his arrest was obtained on October 31, 1995, alleging violations of his bond.

On December 27, 1995, Fuller was arrested in Hawaii. On January 23, 1996, Fuller was returned to the Eastern District of Louisiana where he was remanded to the custody of the United States Marshal.

On May 9, 1996, the government filed a Motion for Criminal Contempt against Fuller alleging that he willfully disobeyed the district court's lawful commands of October 26, 1995, and the magistrate judge's order of October 11, 1995. On June 7, 1996, Fuller was rearraigned and entered a plea of guilty to the criminal contempt charge. A factual basis was signed by Fuller and his attorney and entered into the record. The district court sentenced Fuller to twenty-four months imprisonment to run consecutively to the term of eighteen months imprisonment imposed on October 25, 1995. On June 10, 1996, the district court held a hearing to advise Fuller of his right to a jury trial because the court had neglected to inform Fuller of this right on June 7. Fuller waived his right to a jury trial and again entered a plea of guilty, with the knowledge that his sentence would be twenty-

four months.  Fuller timely appealed.

Court-appointed counsel for Fuller filed a brief as required by Anders v. California, 386 U.S. 738 (1967), requesting leave to withdraw.  This court denied the motion and directed the parties to brief the following issues: 1) whether the district court was authorized to convict Fuller of criminal contempt for violating conditions of his bond, inasmuch as the district court's order of October 26, 1995, states only that a violation of the conditions stated in the order "will result in the immediate revocation of the defendant's bond," and 2) whether it was plain error to sentence Fuller without referring to U.S.S.G. § 2J1.1 and other Sentencing Guideline provisions that might be applicable.

## II. DISCUSSION

*A. Authority of the District Court to Convict Fuller of Criminal Contempt*

Fuller contends that the district court was not authorized to convict him of criminal contempt for violating the conditions of his bond.  He relies on two theories.  First, he argues that he did not have adequate notice because the court's October 26 order, which permitted him to self-surrender for service of his sentence for violating his supervised release, stated that his failure to comply with the conditions imposed would "result in the immediate revocation of [his] bond," but did not mention prosecution for contempt of court as a sanction.  Second, he

6

argues that his violations were not egregious enough to constitute criminal contempt.

Fuller did not raise these points in the district court. When a defendant in a criminal case has forfeited an error by failing to object in district court, this court may remedy the error only in exceptional circumstances. United States v. Calverley, 37 F.3d 160, 162 (5th Cir. 1994)(en banc), cert. denied, 513 U.S. 1196 (1995).

Under Federal Rule of Criminal Procedure 52(b), this court may correct forfeited errors only when the appellant shows the following factors: (1) there is an error, (2) that is plain, (3) and that affects his substantial rights. Id. (citing United States v. Olano, 507 U.S. 725, 732 (1993)). Plain error is one that is "clear or obvious, and, at a minimum, contemplates an error which was clear under current law at the time of trial." Calverly, 37 F.3d at 162-63 (internal quotations omitted). "[I]n most cases the affecting of substantial rights requires that the error be prejudicial; it must affect the outcome of the proceeding." Id. at 164. This court lacks the authority to relieve an appellant of this burden of proof. Olano, 507 U.S. at 741.

If the above factors are established, the decision to correct the forfeited error remains within the sound discretion of the court. Olano, 507 U.S. at 735-36. The court will not exercise that discretion unless the error seriously affects the

7

fairness, integrity, or public reputation of judicial proceedings.  Id. at 736.

Fuller has failed to show that the district court erred in the ways that he suggests.  As to the adequacy of notice that he might be prosecuted for criminal contempt, we can only conclude that Fuller had ample notice.  At the hearing on October 11, 1995, Fuller was advised by the magistrate judge that if he violated any condition of release, he could be prosecuted for criminal contempt.  Further, at the conclusion of the hearing before Chief Judge Sear on October 26, 1995, Fuller signed an Order to Surrender which stated that if he failed to report, he could be cited for contempt.  Finally, the government filed a Motion for Criminal Contempt which fulfilled all the notice requirements of Federal Rule of Criminal Procedure 42(b).  Thus, Fuller's claim that he lacked adequate notice is without merit.  Fuller's claim that his violations did not rise to a level egregious enough to constitute criminal contempt is likewise without merit.  The relevant statutes and our case law make clear that violations of travel restrictions or other conditions of release constitute criminal contempt of court.  18 U.S.C. § 3148; United States v. Williams, 622 F.2d 830, 839 (5th Cir. 1980)(en banc), cert. denied, 449 U.S. 1127.

*B. Failure to Refer to Sentencing Guidelines*

Fuller contends that the district court committed plain

8

error when it sentenced him to serve twenty-four months for contempt without having a presentence report prepared and without referring to and applying the Sentencing Guidelines as required by Rule 11(c)(1) of the Federal Rules of Criminal Procedure.[1]  He argues that even if the court found no analogous guideline, it should have made reference to the sentencing provisions set forth in 18 U.S.C. § 3553(b), as provided by USSG § 2X5.1.

At the time of Fuller's guilty plea to the contempt charges, Fuller asked the district court to sentence him on that day.  The district court then sentenced Fuller to twenty-four months imprisonment.  Fuller made no objections to the method of sentencing.  Two days later, Fuller again appeared before the court to confirm the voluntariness of his plea.

The government concedes in its brief that the district court plainly erred by not ordering the preparation of a presentence report and not referring to the Sentencing Guidelines.  Section 6A1.1 of the Sentencing Guidelines provides that "[t]he defendant may not waive the preparation of the presentence report."

---

[1]FED. R. CRIM. P. 11(c)(1) provides in pertinent part:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . ., the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances . . . .

However, the government contends, and we agree, that the failure of the district court to order the preparation of a presentence report did not affect Fuller's substantial rights. In this instance, there was, in fact, sufficient information in the extensive record before the district court to enable the meaningful exercise of the district court's sentencing authority pursuant to 18 U.S.C. § 3553, cf. USSG § 6A1.1, and Fuller has not identified any information that the district court lacked.

The district court's error in failing to make reference to the Sentencing Guidelines also did not affect Fuller's substantial rights. The section for criminal contempt in the Sentencing Guidelines, § 2J1.1, states only: "Apply § 2X5.1 (Other Offenses)." Section 2X5.1 provides:

> If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable.[2]

---

[2]18 U.S.C. § 3553(b) provides in pertinent part:

> In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). . . . [I]n the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

18 U.S.C. § 3553(a) provides in pertinent part:

10

The commentary to § 2J1.1 provides:

Because misconduct constituting contempt varies significantly and the nature of the contemporaneous conduct, the circumstances under which the contempt was committed, the effect the misconduct had on the administration of justice, and the need to vindicate the authority of the court are highly context-dependant, the Commission has not provided a specific guideline for this offense. In certain cases, the offense will be sufficiently analogous to § 2J1.2 (Obstruction of Justice) for that guideline to apply.

As the commentary makes clear, criminal contempt is a highly fact-specific offense. The Commission did not create a guideline for this offense and was unable to recommend the application of any analogous guideline provisions, except, in certain circumstances, § 2J1.2 (Obstruction of Justice). Therefore, the determination of the appropriate punishment for criminal contempt is largely left to the district court's discretion. Under these circumstances, we cannot say that the district court's failure to

The court, in determining the particular sentence to be imposed, shall consider --

\* \* \* \* \* \*

**(2)** the need for the sentence imposed --

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

11

apply the Sentencing Guidelines affected Fuller's substantial rights.

*C. Reasonableness of the Sentence*

Fuller argues that the sentence imposed by the district court is unreasonable. A sentence imposed for which there is no applicable sentencing guideline will be reversed only if it is plainly unreasonable. 18 U.S.C. § 3742(e)(4); United States v. Underwood, 880 F.2d 612, 619 (1st Cir. 1989). In making a reasonableness determination, we must consider the reasons the district court gave for the sentence, and we also must consider the policy directive set forth in 18 U.S.C. § 3553(b):

> In the absence of an applicable sentencing guideline . . . the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

Using the appropriate Guidelines analysis, we conclude that the sentence of twenty-four months is not unreasonable. A comparison with several somewhat analogous guidelines leads us to this conclusion. Section 2J1.2 (Obstruction of Justice) has a base offense level of 12, which, combined with Fuller's criminal history category of II, would result in a guideline range of 12 to 18 months. Section 2J1.6 (Failure to Appear by Defendant) has a base offense level of 6 for a failure to appear other than for service of sentence. However, in Fuller's case, the base offense level would be increased by 9 because his underlying offense is

12

punishable by imprisonment for a term of 15 years or more, resulting in a base offense level of 15.  Thus, under this section, the guideline range applicable to Fuller would be 21 to 27 months, or 15 to 21 months if Fuller were granted a two level reduction for acceptance of responsibility.  Because guidelines for offenses even remotely analogous to Fuller's provide a sentencing range of 4 to 27 months, we cannot say that Fuller's sentence of 24 months is clearly unreasonable.[3]

*D. Compliance with Rule 11 Requirements During Plea Colloquy*

Fuller argues that he was not fully informed of the consequences of his guilty plea on the charge of criminal contempt, in violation of Rule 11 of the Federal Rules of Criminal Procedure.[4]  More specifically, Fuller contends that he

---

[3]Fuller also attempts to argue that his sentence is unreasonable because it is consecutive.  This argument fails because the Sentencing Guidelines explicitly state that if a defendant commits an offense after he has been sentenced for a previous offense, "the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment."  USSG § 5G1.3.

[4]    Rule 11 provides in pertinent part:

> **(c) Advice to Defendant.**  Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any

13

was not informed (1) about the potential sentencing range he faced, (2) that the sentence in the judge's discretion was in no way limited by statute, and (3) that reference would have to be made to the Sentencing Guidelines for an analogous offense.

At the initial plea colloquy, on June 7, 1996, the district court made sure that Fuller had read the motion charging him with contempt and that he understood the offense with which he was charged. The attorney for the government then asked Fuller: "Do you understand that, if the Court accepts your plea of guilty to this contempt of court, the Court may sentence you to a fine or imprisonment at its discretion?" Fuller said that he understood. The district court explained that Fuller had a right to a hearing in which he could cross-examine witnesses and offer evidence in

---

applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and

\* \* \* \* \* \*

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination . . . .

\* \* \* \* \* \*

**(h) Harmless Error.** Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

14

his defense.  At that point Fuller reaffirmed his desire to enter a plea of guilty and waive his right to a hearing.  The district court then asked Fuller: "And you understand that the sentence I may impose is fully within my discretion?"  Fuller responded, "Yes, Your Honor; I'm well aware of that."  Fuller requested that the district court sentence him that day.  After going over the history of Fuller's offense, the district court accepted his plea of guilty to the charge of criminal contempt and sentenced him to two years incarceration.

Several days later, on June 10, 1996, the district court called Fuller back into court to make certain that Fuller was aware of his right to a jury trial.  The district court gave Fuller the opportunity to withdraw his guilty plea and substitute a plea of not guilty.  Fuller stated that he wanted to leave things as they were and waive his right to a jury trial.  The district court then had the attorney for the government read the factual basis for the guilty plea.  Fuller attested to the correctness of the factual basis and, in response to questions by the district court, affirmed that his waiver of his right to a jury trial was voluntary.

Mistakes made during a Rule 11 plea colloquy should be reviewed for harmless error.  FED. R. CRIM. P. 11(h).  "[W]hen an appellant claims that a district court has failed to comply with Rule 11, we shall conduct a straightforward, two-question 'harmless error' analysis: (1) Did the sentencing court in fact

15

vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?" United States v. Johnson, 1 F.3d 296, 298 (5th Cir. 1993) (en banc). "To determine whether Rule 11 error is harmless . . . , we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." Id.

The district court varied from the procedures required by Rule 11 when the court failed to inform the defendant that the court is required to consider any applicable sentencing guidelines.[5] This variance, however, did not affect Fuller's substantial rights. The commentary to the Sentencing Guidelines section for criminal contempt makes clear the fact-specific nature of the offense and leaves the determination of the appropriate sentence to the district court's discretion. Fuller understood that the sentence the district court chose to impose was fully within its discretion. Furthermore, Fuller had an opportunity to change his guilty plea after he knew that his plea would result in a sentence of two years imprisonment, but he still chose to plead guilty. Thus, to the extent that the district court varied from Rule 11 procedures, such error is harmless.

---

[5]We note that the district court also did not mention a statutory maximum or minimum penalty. This was not error because there is no statutory maximum or minimum penalty for criminal contempt. See 18 U.S.C. § 401(3).

16

## III. CONCLUSION

For the foregoing reasons, Fuller's conviction and sentence are AFFIRMED.